3, 11, 0283, people of the state of Illinois, Appalachia, Don Duffy v. Scott Rossow, Appalachian, Lawrence Beaumont. Before we begin, I would just like to advise the participants today that Justice McDade will be participating in this case as a full panel member, but she's not able to be with us today, so she will have the benefit, of course, of the briefs and the audio tapes of the proceedings today. May I please report good morning, Your Honor, Counsel. My name is Larry Beaumont. I represent the appellant, Scott Rossow, in this matter. I was not the trial lawyer at all. I picked up the case after the conviction and I did post-trial matters and, of course, the appeal. Mr. Rossow was convicted of four counts of aggravated driving under the influence. The matter involved a single car accident. It was a two-seated car, a Corvette. There were three people in the car, my client, Mr. Rossow, and two victims who died from the accident, Mr. Summers and Mr. Sauceda. And the issue at trial, of course, the whole concern was who was driving the vehicle. It's our position, we raised two issues in the field, but it's our position, the primary issue is that the state did not prove Mr. Rossow guilty beyond a reasonable doubt because they didn't prove beyond a reasonable doubt that he was the one actually driving the vehicle. Now, in order to prove their case, the state used an expert witness from Northwestern, a man by the name of Michael Dittal, I believe, and he opined, of course, in his testimony, that based on some assumptions and by process of elimination, he concluded that my client was driving the vehicle. Now, it's important to understand that this vehicle was a two-seated car, it was a Corvette, and these three people in the car were literally within inches of each other. And what they had to prove is to where the bodies ended up after the accident because when the police came and found the scene, they had no idea when the accident occurred. All three victims were outside of the car, including my client, who was unconscious. So there was no direct evidence of who was actually driving the car. I think it's significant. Our argument simply is based on the fact that Mr. Dittal's testimony about who was driving the car is not based on science. It's not based on any particular expertise. It's simply speculation. And if that's the case, that evidence doesn't rise to the level of proving the case beyond a reasonable doubt. Now, the reason I suggest it's based on speculation is because he doesn't offer any type of scientific principle as to how he concluded that. He assumes, for his opinion, that Mr. Summers was driving in his hatchback portion of the Corvette. Now, the problem with that, there's no evidence that Mr. Summers would have even fit back there. He was a large man, let alone fit back there with a duffel bag. Mr. Summers had just come back from training in the military. He met up with my client and his brother, and he was carrying a duffel bag of his clothes that he had carried back coming home. He met up at a nightclub or a bar of some sort. But there's no evidence specifically that Mr. Summers was indeed in the back of the hatchback. The witness assumed he was, simply because they had to eliminate various seats in the car to put my client in the actual driving seat. Mr. Sauceda, unfortunately, his legs were severed in the passenger seat of the car, apparently. His legs were actually located in the passenger seat. So it was pretty clear, at least, that Mr. Sauceda had sat in that passenger seat. Now, the next question is, where were the other two individuals? And what Mr. Detallo does is he draws a line based on a PowerPoint from the hatchback, which again is a few inches behind the seat, over to where Mr. Summers' body was found. Then he draws another line from where Mr. Sauceda apparently was sitting in the passenger seat to where his body was found, and then concluded that the only other spot left open is the driver's seat, and draws a line from that seat to where my client was found, because he was found within close proximity to Mr. Summers. The problem with that, though, he says he touts Newton's Law, but he doesn't do what expert accident reconstruction people do. They have formulas, they have mathematical formulas, they use computers, they can determine the path of a vehicle, the speed of a vehicle in an accident. They do surveys of the area, they know different points the vehicle traveled, they can measure the tire marks, they can tell how fast, based on all these formulas, they can tell how fast the vehicle was going and how the vehicle traveled and how it ended. But that doesn't deal with what's going on inside the car, and what he doesn't deal with is what happened after the vehicle struck the tree, and what happened to the bodies as they're coming out of the vehicle. Now I suggested, and I stated this in my reply brief, this case wasn't charged to well over a year or so after the accident. Now the state, Will County, had their own accident reconstruction expert. He was trained the same as the defendants expert. They all went through Northwestern, they all went through the three-module training programs, the 80-hour accident reconstruction, initial course, the second course, and the third course. They all had the same training. None of them had any specific training in physics, in engineering, anything of the kind. And apparently the Will County expert couldn't opine who was driving the vehicle, because had he been able to do that, certainly there would have been an indictment a year and a half earlier. But he couldn't give any such opinion, and he didn't give any such opinion at the trial. He did opine how the vehicle traveled. Because again, these people can determine that, and that's based on engineering, it's based on science. There's principles involved. And they can determine how a car has traveled. But he couldn't opine, apparently, because he didn't, as to what happened to the bodies after the impact and what they hit or didn't hit, how they were deflected, what happened post-crash. Now our expert, the fence expert, again had the same training as the other two people, clearly testified that you can't form any such opinion. There's no way of telling, because there's all kinds of variables involved that have not been dealt with. Now I know it's tempting for an expert to give opinions, and it's tempting by the trier of fact to give credence to that opinion, because it sounds as though it's grounded in science. But in this case, the problem we have is not. And if you look at the testimony, you see no evidence of how he concluded, other than saying, well the force made them go that way. I mean that's basically Newton's Law, that the bodies travel in the same direction as the force that's applied. But, okay, fine, what happens to those bodies after they leave the vehicle? What happens if it hits a tree? Does it deflect? Where does it deflect to? What happens, is there a difference between the bodies coming out of the car, do they get tangled in some of the, this car was obliterated, you see, I submitted the pictures in the record, you see this car was obliterated. What happens to those bodies if it comes in contact with various parts of the car? We saw Mr. Sauceda's legs were severed. How did that change the dynamics of the passengers flowing around in this car, in the direction that they went off? It's just as plausible, your honors, it's just as plausible that my client was sitting in the passenger seat with Mr. Sauceda, next to him. I've done it, I've been in Corvettes with two people sitting in the passenger side, and Mr. Summers, who just coincidentally only happened to be the only individual that was not drinking alcohol, he had no alcohol content. My client was clearly intoxicated, and Mr. Sauceda was clearly intoxicated. So it just so happened, it's very plausible, just as plausible as the state's theory, that Mr. Summers was driving that vehicle, and not my client. That my client was simply close proximity to Mr. Sauceda at the time of the accident, and that's how they ended up in generally the same position. Because again, Mr. Summers is being ejected from this car, there's a massive force going on in this car, clearly, enough to sever Mr. Sauceda's legs, enough to obliterate the car. He clearly could have just as easily been ejected from three feet, two feet from where the state says he must be. Now those arguments were made to the jury, I mean to the bench trial. I think it was, like I said, the problem with that, the problem though, Judge, is that if the opinion is speculative, part of it's scientific, but part of it's speculative, it's hard for anybody to separate and determine what is speculation and what's not. The judge is certainly not a physicist, he's not an engineer, the prosecution certainly is not that, they accept what this guy says. But the problem we have, Judge, is if it's such a common, or even if it's an acceptable principle that it was based on, what are they? How do you just say, well Newton's Law, how do you just say that? But more important than that, then why can't their own expert, Mr. Kearse, say the same thing? Because he had the identical same training. And we know he couldn't because he would certainly have if he testified to it, and he didn't. And certainly this case would have been charged much earlier because they had his evidence and his testimony from the beginning. Because he was out there at the crash doing the examination. Well the defendant's expert clearly told the judge that there wasn't enough information. Correct. And the judge looked at it as though it was a question of credibility, oh I believe this person more than that. And I understand that, like I said, it's tempting to do. But the problem is if the opinion is not grounded in science to begin with, it's not reasonable. And it doesn't suffice to prove beyond a reasonable doubt. And that's the problem. Now the judgment can be supported by circumstantial evidence of all the things that happened. Absolutely. But the problem is, again, the evidence, the opinion given by Mr. DiTallo has to be grounded to be sufficient, has to be grounded in principles of his expertise. That's what the federal case that I cited, Benson, says you can't just take an expert and suddenly give opinions that are not grounded in what that expertise is to begin with. And that's exactly what happened here. And again, I can understand how the court is not an expert and simply sees conflicting opinions and decides. But the problem here is it's not based on science. And if it's simply not based on science, it's not reasonable. It doesn't go beyond a reasonable doubt. And if you look at the record, again, and I urge the court to look at the record, but if you look at the record of the testimony, and I've read it several times, you will see no principles of science or engineering that explains how Mr. DiTallo determined where those bodies ended up. He simply drew a line back to a point within a square of less than a couple feet. And it's impossible to do. That's the problem. It can't be done. And two of the experts apparently had the same opinion. Now, Judge Bernal decided to choose to credit the third testimony. But that doesn't mean that decision was correct, and it doesn't mean that that opinion was grounded in the expertise. And I'm suggesting it's not, simply not. And that's our position. Again, there was evidence in the record that Mr. Summers liked to drive this car, that he had driven this car before. There was no evidence that he could fit in a hatchback, let alone fit in a hatchback with the duffel bag that he came back with the military. The evidence is clear that of the three, Mr. Summers is the only person that's not intoxicated. Judge Bernal talked about, well, they were going to have to make a separate stop and change drivers. Well, they would have had to do that no matter what happened, because if he was in the hatchback, they would have to stop, get out of the car, lift the hatchback and let him out, or let him crawl out through the passenger compartment. The point is, there was no reason, there was no evidence other than the supposed testimony, the testimony of Mr. Dattello that's supposedly based on some type of expertise. But I challenge the Court to find in the record what that's based upon, what principles that's based upon. I just want to make sure that the record and the table is clear on what you're saying. His testimony regarding Newton's Law and where these bodies would go has a component of science, but where those bodies land and the exact location can't be determined based on the science he's relying on. And so then he has to interject his subjective reasoning to make that determination, something the other two experts could not and would not do, but that he said, yes, because of Newton's Law, the bodies have to go here and land here. And what you're saying is, that is mixing a little bit of science with a lot of opinion, because the science is not exact enough to allow that determination with three people in that small compartment. That's absolutely correct, because the science he uses, Newton's Law, the bodies are going to travel out the right side of the vehicle based on the force when the vehicle hits the trees, there's force going in the opposite direction. Clearly a lot of force, because again, it severed Mr. Salcido's limbs, and the car was obliterated. Destroyed the car. Totally destroyed the car. The force is going in that direction. No question. That part's scientific. Yeah, we know all three bodies are going to go that way. But the problem we have here is where the bodies actually landed, because what he does is he says, okay, you're going to land here, here, and here, and then he goes back and says, well, that came out of this spot in the vehicle. And that's what I'm suggesting can't be done. And he doesn't say how he did that. He just says, well, it makes sense, Newton's Law, it goes in that direction, it lands there, it makes sense. But the problem is, when they do a reconstruction of the car, they've got different points, places, they've got tire marks, they've got things they point to, and he says, okay, when you've got this length of a tire mark, and this kind of tread mark, and it goes over the other tread mark, we can measure these things, we can tell how fast the car's going, we can tell how it turned, clearly they could scientifically determine this car was yawing to the left, and how it got to the tree. No question about that. But the problem is, he goes further and says, well, Newton's Law says the bodies end here. Well, Newton's Law says no such thing. In order to confidently determine where those bodies ended, they have to determine all the variables between those two points. And that was not done. He admitted it wasn't done. He has no clue. Did the body strike the tree and get deflected? He says, well, the bodies don't bounce. That's not the point. The point is, was it deflected? Did it go this direction instead of that direction like the other two bodies? Was there a difference in the time? He clearly testified he doesn't know who came out first, second, or third. He has no idea. So how could you possibly say, well, the guy had to be in the hatchback and came out first, and he doesn't know? And I'm suggesting this is plausible, and hence Pat Catteridge was out, that Mr. Summers came out of the driver's seat. That's the problem. Is there glass in Mr. Summers? Well, there's glass on the right side of the car. If Mr. Summers ejected through the top of the car out of the driver's seat, like I'm suggesting, he'd have the same glass. Same injuries. He has this blunt force trauma. If he hit the tree, he's going to have all kinds of blunt force trauma. But you know, Mike, when I asked the question before about the closing argument before the fact-finding, before the judge, these arguments were made… I don't think they were made with… I disagree they were made with precision. It's the problem with the ultimate extrapolation. I think, to answer your question, I think everybody there, including the trial jurors, felt trapped to the fact that when you've got an expert saying something, it's all grounded in science. And the problem is they didn't focus on this particular issue. Because had they, which clearly could have pointed out to the court, and I know they argued to the court, why didn't Mr. Hirsch testify to the same thing? Because they all had the same training, the same experience in essence, and yet only one out of the three can say, come up with this opinion. Any further questions? Thank you, Mr. Goldman. Ms. Duffy? Good afternoon, Your Honors. Counsel? The state, of course, takes issue, as they did in their brief, with the opinion of counsel as to whether or not this evidence was sufficient to prove that the defendant was driving this automobile. I'd first like to dispel his allegation that the expert, Deputy Kirsch, who worked for the Will County Sheriff's Department, he was an accident reconstructionist, and he did a great many things, taking photographs, he took measurements, and determined the speed of the vehicle before it struck the tree. Apparently some 98 miles an hour when it made impact at the trees. The reason he did not render an opinion as to who was driving the vehicle is because he wasn't asked to. That was not his function in this trial. Mr. DiTallo was contacted by the Mocena Police Department as an accident reconstructionist, and his primary focus was to determine who was the driver of this automobile, which he did do. He laid forth his qualifications, his education, and there was no objection to him qualifying as an expert witness. Deputy Kirsch was the police officer immediately following the accident. Yes, that's correct. That did those measurements. That's correct. immediately following the accident. He was not, or as part of his duties as a police officer, he made no reference to any indication who he thought was driving the vehicle? No. No. And his reports, his photographs, his measurements were all used by Mr. DiTallo in his conclusions that he rendered. In addition to the coroner's reports, Mr. DiTallo visited the scene, investigated the scene, he took his own photographs, he did testify that he explained how unrestrained occupants, and it was also determined that neither of the two front seat passengers were wearing their seat belts, and there is no restraint in the hatchback. He explained how the unrestrained occupants moved in response to force. He applied Newton's laws of physics, Newton's first and second laws. He used kinetics, kinematics, the application of force, impact configuration, and damage to the vehicle. And he diagrammed all of this. And he explained that Newton's second law of motion, under that law, force above zero accelerates an object in the direction of the force, and the more acceleration there is, the more force is applied. In this case, it was determined the car impacted the tree at the passenger side A pillar, where the front door meets the frame of the car. The impact opened the passenger door, and the passengers would have moved to the passenger side of the vehicle. That would be, obviously, Mr. Saucedo, since he, unfortunately, left his legs in the passenger seat while in the car. And the driver, sitting next to the passenger, would have been forced out that open passenger door, and that's exactly where the defendant landed, outside, right side of that vehicle, next to Mr. Saucedo. When the deputy came upon the scene of the traffic accident that night, she walked up towards the back of that Corvette. She saw a body, first, towards the back end of the car. That body was Christopher Somers. The autopsy report showed that he had been injured from head to toe. Numerous broken bones, numerous internal injuries. Mr. Detallo testified that you would assume those injuries would have been caused by footballing, or bouncing around in an unrestrained portion of the vehicle, and then ejected through the hatchback. And, indeed, his body showed glass. He had glass on the top of his body. Next to Mr. Somers was his bag that he had brought with him, picked up at O'Hare Airport. Next to, it was towards his feet. Beyond his body, then, lay the back bumper of the car with the license plate number on it, and the broken hatch window towards the back of that vehicle. Now, I dispute the fact that Mr. Detallo didn't use science to render an opinion, but here's the problem with all of that. Those arguments were made to the judge. The expert witnesses were there to aid the trier of fact in coming to a determination, but they weren't necessary. Circumstantial evidence alone can prove beyond a reasonable doubt who the driver of that vehicle was. And when you come upon that scene, and you have Mr. Somers' body next to the back bumper of the car, the broken hatchback here, and then you have to go around to the side of the car, where it impacted the trees, Mr. Saucedo, without his legs, the defendant, and then the passenger door standing open. What does common sense in your intelligence tell you about who was driving that car? Now, there was an expert called before... The argument by the defendant, though, is that the expert's reconstruction testimony regarding the position of the bodies after the impact was not within the purview of that expertise, and therefore was an improper opinion, which then tainted the finding by the trial judge. But it was within the purview of his expertise. And when you go through his qualifications and his experience and how he explains all of these laws of motion, and why you would expect to find bodies where they were, because the car impacted the tree at the A-pillar, it forced those two people out this way, and whoever was in the hatchback, out through the hatchback. Those are based upon his scientific testimony. Now, the cross-examination of this expert, the state's main expert, they didn't go to great detail in the cross-examination of the expert dealing with the known and unknown factors that were referred to in the argument, did they? No. But they relied on their own expert that they called to... Who said that no opinion could be rendered with regard to the position. Well, he said he couldn't render an opinion, and I'm not surprised he couldn't. First of all, he admitted that he had no knowledge about whether the three passengers in the Corvette struck any object. He said that he did not... He had not investigated this case. He didn't go to the site of the crash. He did not view the vehicle. He didn't speak with any police officers. He didn't speak with the coroner, paramedics, or hospital staff. What Mr. Kalsert reviewed was a two-page report and some photographs given to him by defense counsel. He couldn't render an opinion, he said, because one could not reach a conclusion as to who was driving the vehicle because vehicle parts, glass, or trees could have changed the trajectory of the bodies, except there's no evidence that any of those things happened, that anything got in the way. The car just disintegrated when it hit the trees and propelled all three people out of that car, these two people out this way, the passenger and the driver, and the third victim out of the hatchback, and that was Mr. Summers. Now, I mean, I don't know. No one disputed that Mr. Kalsert was a qualified expert. The problem is he didn't have anything before him that he could base an opinion on. What he did admit, however, was he agreed with Mr. Detallo's conclusion that unrestrained occupants in the front seats would move toward impact and would continue to move unless acted upon by an outside force. That's the defendant and his passenger, Mr. Saucedo. That's the defense expert. Now, as I said before, it was not necessary that the state provide these expert witnesses. They're there to aid the trier fact. It was up to the trier fact to conclude who was driving this vehicle, or more specifically, was the defendant driving this vehicle? And I'm going to suggest to you that his conclusion that it was the defendant is not so unreasonable or improbable that it creates a reasonable doubt of his guilt. Do we have any more questions on this first issue? I'd like to briefly touch on the second issue, the waiver of his right to a jury trial. Excuse me. Basically, he was tricked to waive the jury trial. Boy, it sure sounds like it. And yet, Your Honor, it's clear that the waiver itself complied with the law, complied with the statute and the case law. It was knowingly made in open court. The judge admonished him. He made an oral waiver. He signed a written jury waiver, which the trial judge questioned him about. That written waiver, contrary to counsel's allegation, is located in the common law record at page 134. Afterwards, he purported to sign an affidavit that said that his lawyers told him that Judge Vermilla wouldn't believe these accident reconstruction experts, so waive jury, we'll have a court trial. But he had three counsel. He never said which of his attorneys told him that. He didn't have the affidavit notarized. It wasn't sworn to. And that portion of his motion for a new trial based upon that affidavit and that allegation was heard before Judge Kinney. Judge Kinney heard all of that and apparently didn't believe the affidavit and denied the motion for a new trial, and I think justifiably so. Do you have any questions on that issue? Thank you, Your Honors. Thank you so much. Mr. Beaumont, third part. You also suggest that Mr. Kirsch wasn't asked whether or not he could opine who was driving that vehicle. Well, don't you think when the state's attorney's office was deciding whether to charge the only living person in this accident with the crime, that they asked Mr. Kirsch, can you prove beyond a reasonable doubt that he was driving the vehicle? And trust me, I suggest if he could, if he could opine that, these charges would have been brought a year and a half earlier, but they're not brought, coincidentally, until a few months after they retain Mr. Vitale. To answer Your Honor's question about the cross-examination, the cross-examination was horrendous in this case, in my opinion, but the problem is that doesn't change the fact that if this opinion is not based on science, it doesn't go beyond a reasonable doubt. And that's the problem. I used to be a prosecutor, and I used to prosecute arson cases. And very much like accident reconstruction cases, they used to send firefighters to these three-module arson investigation schools and teach these guys how to be cause and origin experts. And I put it in the same type of principle. These people have no expertise in physics, no expertise in engineering, but they know about fighting fires. And I put testimony on the stand by these people that says that what they call spalling on the cement, where the cement is charred under the fire, that shows there's a poor cat because it's hotter under there. And I put people in prison based on that testimony. And the problem is it's bloating. Physics has been tested. It's cooler. The coolest part of the fire is underneath that liquid where the excellent was placed there. But the point I'm trying to make is these people sound believable. I didn't know any difference. I'm not a physicist. They seem to know what they're talking about. So it makes sense. The trial court certainly looks at it, and obviously they've convicted people based on this testimony, but it's not grounded in science, and that's the problem. You take somebody like Mr. Detell. He doesn't even have a college degree. He's not trained in physics. He's not trained in engineering. He teaches accident and destruction. Can they determine how a car traveled? Sure, absolutely. There's principles involved. And he uses those principles to determine that. But again, I challenge the court. Look to see what principles he utilized to determine that this body came from here instead of here, which is three feet away. What principles did he suggest that this body could not possibly have vaulted out of the driver's seat through the hatchback through the back? None, none other than Newton's Law, and that is the bodies are going to go in relation to the force. Well, we know that, but they've got much more than Newton's Law involved here. They've got a precise point where the body ended back to a precise point within a small square where the body started. That's the problem. But isn't a bigger problem that – doesn't this become more of a fry issue where it isn't the fact that this individual can't make a – his testimony isn't reliable because it's not based on science, but doesn't that become a problem of admitting the testimony of accident reconstructionists that are trained in this way as expert witnesses? I mean, they've all been vetted through the fry process as being able to offer this kind of testimony. Well, offer the reconstruction of the vehicle, no question, and that's scientific. I'm not arguing that. But this extra step is the problem, and they didn't raise fry issues. They probably should have. But still, it's like the cross-examination question. It doesn't change the fact that if, indeed, the evidence is not grounded in science to begin with, it can't be proved beyond a reasonable doubt because it's not competent evidence. This court, if you look at that evidence, you look at the testimony, and if you're not convinced beyond a reasonable doubt that that's science, it's grounded in science to get the body from a specific point in a vehicle in the size of three by three feet, several feet away to another location. If that's not grounded in some type of scientific principle, some kind of mathematical formula, something beyond speculation, then it's not competent evidence. What did this record suggest that it's not grounded in science? There's nothing suggested that it is. That's the problem. There's no evidence to suggest it is grounded in science other than Newton's Law. Bodies go that way. We know that. But we've got much more. I'm asking the question under Wilson v. Clark. If you have an expert who testifies, and if that expert's opinion is in evidence, then it's the duty of the cross-examiner to bring out any of the alleged flaws in the testimony. Absolutely. And I agree with that. But, again, my point simply is this, Judge. If the evidence is not based in science, though, it's still not competent evidence. We don't waive. We don't give up because we didn't ask the proper questions. We don't waive the requirement to be proved guilty beyond a reasonable doubt. Is it a matter of judicial notice that something is grounded in science or is not grounded in science? I think the court can make a determination if it's grounded in science. It certainly should have been argued below, and it wasn't. But that doesn't change the fact that it's not. That's all I'm saying. There's nothing in the record that suggests it is other than this. You'll see there's two references. Newton's Law. Then he makes a statement, kinetics and kinematics. But don't say how. How does it get to this particular point from this point back and forth? There's no testimony whatsoever about that. And when Judge Vermilla decided, he just said, well, I credit this guy more than the other people. I mean, the reason I'm asking these questions, in cross-examination of experts and in the examination of experts, the expert, if qualified in this particular area of science and in this particular, you know, in the relevant inquiry of the trial, then the expert could render an opinion. Once the expert renders an opinion, he or she does not have to go into the basis of that opinion. That can be brought out through just cross-examination. Many times the direct examiner will bring out the basis for the opinion. But under Wilson v. Clark, it's not, you know, the old case that established all this and that version of 702, doesn't have to do that. So this expert rendered an opinion. We have the record. We have what we have in the record. And what you're saying, it seems to me is what you're suggesting, is that we'll have to take judicial notice that you're claiming that this isn't grounded in science because there weren't additional indications from the expert that there were mathematical formulas, that's one of the things you said, used, that there weren't other things used. There was only a reference to Newton's laws and kinetics. Do I have that choice? Yes. Yes, because I understand under Wilson v. Clark they don't have to explain the opinion, but it still has to be grounded in science in the first place. And that's the problem we have with this case because it's easy, it's tempting to listen to somebody speak about something he doesn't know what he's talking about because part of it is scientific, part of his expertise is there. But this opinion is beyond that expertise. And the reason you say that is because there were no mathematical formulas. Because there's nothing, no mathematical formulas, no principle of engineering, no computer program, no training to say bodies go this way, this way, this way, at this point in time, back to a specific little area, nothing. All that's said is Newton's law, bodies go that way. Well, I understand that, but we've got more than bodies going that way. We've got a specific point on both sides that supposedly, and Newton's law doesn't cover this, as to where they came from. Thank you. Thank you, Mr. Fullmont. Thank you. Thank you both for your very compelling arguments here today. This matter will be taken under advisement, and as we said earlier, Justice McDade will participate in the decision, and a written decision will be issued by this court in due course. And right now, we will take a brief recess.